**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-02676-CMA-MJW

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MANTRIA CORPORATION,
TROY B. WRAGG,
AMANDA E. KNORR,
SPEED OF WEALTH, LLC,
WAYDE M. MCKELVY, and
DONNA M. MCKELVY,

      Defendants.

_____

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANT MANTRIA CORPORATION**
_____

      This matter is before the Court on a Motion for Summary Judgment filed by

Plaintiff, the Securities and Exchange Commission ("SEC"), against Defendant Mantria

Corporation.[1]  (Doc. # 159.)  For the following reasons, Plaintiff's Motion is granted.

_____

      [1] On April 20, 2011, Plaintiff filed an Unopposed Motion to Withdraw Plaintiff's Motion for Summary Judgment [Docket #159] against Defendants Troy B. Wragg, Amanda E. Knorr, and Wayde M. McKelvy (Doc. # 188), which the Court granted on April 21, 2011 (Doc. # 189).  Accordingly, Plaintiff's Motion only remains pending against Defendant Mantria Corporation.  The SEC did not file the Motion against Defendant Donna McKelvy because, on December 16, 2009, the Court granted the SEC's Motion for Permanent Injunction against Ms. McKelvy.  (Motion at Doc. # 31; Order at Doc. # 36.)  For reasons unknown, the Motion was also not filed against Defendant Speed of Wealth, against whom the Clerk of Court entered default on March 15, 2011.  (Doc. # 171.)  The SEC has not filed a motion for default judgment against Speed of Wealth.

# I. PROCEDURAL HISTORY

This action arises from a Ponzi scheme perpetrated by the above-captioned Defendants from September 2007 through November 2009.  On November 16, 2009, the SEC filed a Complaint against Defendants alleging the following four claims of relief: (1) fraud in the offer and sale of securities in violation of the Securities Act, Section 17(a), 15 U.S.C. § 77q(a); (2) fraud in the purchase or sale of securities in violation of the  Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5; (3) sale of unregistered securities in violation of the Securities Act, Sections 5(a) and (c), 15 U.S.C. §§ 77e(aa), 77(c); and (4) violations of the Exchange Act 15(a)(1), 15 U.S.C. § 78o(a)(1).[2]

Also on November 16, 2009, the SEC filed a Motion for *Ex Parte* Temporary Restraining Order, Preliminary Injunction and Other Equitable Relief ("Motion for TRO"), seeking an order temporarily restraining Defendants from violating federal securities law; and other equitable relief, including: an order freezing investor funds wherever located, and all assets traceable to such funds; prohibiting each of the Defendants from accepting additional investments; requiring an accounting of investors' funds and other assets; ordering expedited discovery; prohibiting Defendants from altering or destroying documents; and ordering alternative service.  (Doc. # 2 at 1-2.)  That same day, a

---

[2]  The SEC's fourth claim of relief only extends to Defendants Wragg, Knorr, Wayde McKelvy, and Donna McKelvy; it is not asserted against Defendant Mantria.  (*See* Doc. # 1 at 25-26).

hearing was first held before Judge Robert E. Blackburn on the SEC's Motion for TRO[3]
(*See* Courtroom Minutes, Doc. # 10.)  A second hearing was held later that afternoon
before the undersigned, at which the Court found that the SEC had established a
violation of securities laws, entered a TRO, and set the matter for a Preliminary
Injunction Hearing.  (*See* Courtroom Minutes, Doc. # 11; TRO, Doc. # 15.)

The Preliminary Injunction Hearing was held on December 1 and 2, 2009.
(*See* Courtroom Minutes, Doc. ## 24, 25.)  Upon receipt of documentary evidence and
witness testimony, the Court made oral findings and conclusions of law, granted the
SEC's Motion for Preliminary Injunction, and entered an Order for Preliminary
Injunction, Asset Freeze, and Other Equitable Relief.  (*See* Courtroom Minutes, Doc.
# 25; Order, Doc. # 26.)

On March 10, 2010, the SEC filed a Motion for Order to Show Cause Why
Defendants Troy Wragg and Mantria Corporation Should Not Be Held in Contempt of
Court (Doc. # 60), in light of Wragg's execution of a contract transferring frozen Mantria
assets worth as much as $250,000, in part for personal gain, which execution and
transfer was in direct violation of the Court's December 2, 2009 Order freezing
Defendant's assets.  That same day, the SEC also filed a Motion for Appointment of
a Receiver (Doc. # 69).  On March 26, 2010, after hearing testimony and receiving
evidence at a Show Cause Hearing, the Court granted the SEC's Motion for Order to
Show Cause, as well as the SEC's Motion to Appoint a Receiver, and directed the SEC

---

[3]  Judge Blackburn initially presided at the hearing due to the undersigned's unavailability and
consequent inability to hold an immediate hearing.

to file a proposed order concerning the Receiver's appointment.  (Doc. # 80.)  The SEC

duly filed the proposed order on April 23, 2010 (Doc. # 81-1) and, on April 30, 2010, the

Court appointed a Receiver over Defendant Mantria Corporation and its subsidiaries

and affiliates, including Speed of Wealth and its subsidiaries and affiliates.

On February 25, 2011, the SEC filed the instant Motion for Summary Judgment

against Defendants Mantria, Wragg, Knorr, and McKelvy.  (Doc. # 159.)  On March 18,

2011, the SEC filed an Unopposed Motion to Stay Determination of Plaintiff's Motion for

Summary Judgment Against Settling Defendants, namely Wragg, Knorr, and McKelvy,

in light of written settlement agreements it entered into with these individuals, which

Motion the Court granted on March 21, 2011.  (Doc. ## 176, 180.)  Also on March 21,

2011, the SEC filed Unopposed Motions for Permanent Injunction and Other Relief as to

Defendants Wragg and Knorr (Doc. ## 178, 179), which the Court granted on March 29,

2011 (Doc. ## 182, 183).  Likewise, on March 31, 2011, the SEC filed an Unopposed

Motion for Permanent Injunction and Other Relief as to Defendant Wayde M. McKelvy

(Doc. # 184), which the Court granted on April 5, 2011 (Doc. # 186).  In light of the

SEC's settlement with the aforementioned individual Defendants, on April 20, 2011, the

SEC filed an Unopposed Motion to Withdraw Plaintiff's Motion for Summary Judgment

[Docket #159] Against Defendants Troy B. Wragg, Amanda E. Knorr, and Wayde M.

McKelvy (Doc. # 188), which the Court granted on April 21, 2011 (Doc. ## 189, 190).

On April 1, 2011, the SEC filed its Reply in support of its Motion for Summary Judgment against Defendant Mantria. (Doc. # 185.) In pertinent part, the SEC noted Mantria's failure to respond to the instant Motion, which failure the SEC asserts amounts to an admission of the facts upon which the Motion is based, and states that, as a result, the Court should grant summary judgment against Mantria.

## II. FACTUAL BACKGROUND[4]

This case arises from a Ponzi scheme Defendants are alleged to have perpetrated from September 2007 through November 2009 and through which Defendants are alleged to have defrauded investors over $54 million. Mantria was founded and operated by Defendant Troy B. Wragg, who functioned as Mantria's Chief Executive Officer, and Defendant Amanda E. Knorr, who functioned as Mantria's Chief Operating Officer. Defendant Wayde M. McKelvy is the founder and managing member of Speed of Wealth, LLC,[5] which acted as a promoter of Mantria securities. Of the $54,531,488.57 that Mantria raised, Mantria paid a total of $17,500,453.21 to investors, using investors' own funds to pay those returns. Additionally, Mantria used millions of dollars of investor funds to build non-revenue-generating infrastructure, and to pay Wragg, Knorr, and McKelvy commissions and compensation. Based on the funds

---

[4] The following facts are undisputed and are taken from Plaintiff's pleadings, briefs, and attached exhibits.

[5] Some Mantria investors purchased Mantria securities through limited liability companies created by McKelvy and Speed of Wealth, while others purchased Mantria securities directly from Mantria.

raised and the funds paid to investors, Mantria generated a profit of $37,031,035.36. (Doc. # 159, ¶ 20; Doc. # 159-2, ¶¶ 5-8; *Id.* at 5).[6]

Mantria attracted potential investors to seminars held by McKelvy and Speed of Wealth throughout the country, which seminars were advertised by television, radio, Internet, print media, and e-mail.  At the seminars, investors were encouraged to liquidate their traditional investments, borrow as much as possible, and invest as much as possible in Mantria's securities offerings.  After these seminars, Defendants McKelvy, Wragg, and Knorr would send attendees e-mails promoting Mantria's securities and provide written securities offerings in the form of private placement memoranda. Knorr also promoted Mantria securities on an Internet radio broadcast. Mantria's securities purported to provide an opportunity to invest in Mantria's various business ventures, including real estate, a financial lending company (that used investor funds to provide down payments for Mantria real estate), and green energy, in which Mantria's efforts would be profitable and result in payments to investors.  Defendants McKelvy, Wragg, and Knorr described Mantria's securities as safe, high-yield investments with 17% to hundreds of percent returns, or even infinite returns.

---

[6] In support of its Motion for Summary Judgment, the SEC asserts that Defendants Wragg and Knorr, in addition to Mantria, profited in the amount of $37,031,035.36.  (Doc. # 159, ¶ 20.)  However, the SEC's submitted documents render unclear as to whether Defendants Wragg and Knorr profited in this amount.  As evidence of the $6,273,632.78 in commissions McKelvy generated from the scheme, the SEC points to a spreadsheet at Doc. # 159-21.  That same spreadsheet appears to indicate that during the course of the Ponzi scheme, Wragg and Knorr generated commissions in the amount of $294,010.16 and $249,010.16, respectively.

Throughout the course of this scheme, Mantria, Wragg, Knorr, and McKelvy made material misrepresentations in connection with offers and sales of Mantria's securities, including that: (1) Mantria generated millions of dollars in annual profits when, in fact, Mantria generated **no** profits; (2) Mantria is the world's largest manufacturer and distributor of biochar and that Mantria's biochar operations were very profitable when, in fact, Mantria never sold any biochar and never made any revenues from biochar; (3) Mantria built the world's first biorefinery plant in New Mexico when, in fact, Mantria never built or operated such a facility; (4) Mantria's biochar manufacturing facility in Tennessee is producing $6.2 million annually when, in fact, the facility never generated revenue; (5) Mantria paid investors through profitable ventures when, in fact, it paid investor returns using investors' money; (6) Mantria was not a Ponzi scheme when, in fact, it was; and (7) McKelvy reviewed Mantria's books when, in fact, McKelvy did not regularly look at Mantria's books and did not know what Mantria did with its books.

While Defendants were making the aforementioned material misrepresentations to actual and prospective investors, they exchanged several internal e-mails that hinted at the fraudulent nature of the scheme.  (*See* Wragg e-mails at Doc. # 159-17 at 2 (McKelvy to Wragg: "110 registered for tonight 75% names I don't recognize.  Let's blow them away my brother!"; Wragg to McKelvy: "Mantria Speed of Wealth = MSOW = Many Souls Owe Wayde"); *Id.* at 4 (McKelvy to Wragg: "I really think you are going to be a Billionaire . . . [I] sure would like about 250 [million,]"; Wragg to McKelvy: "I'm

7

telling you – I haven't been this excited in a long time.  We are all going to be very rich, but most importantly, we will be very rich together!"); *see also* Knorr e-mail at Doc. #159-18 at 2 ("Let's just make some f*****g money.")).

In connection with the offers, sales, and purchases of Mantria's securities, Defendants failed to disclose that McKelvy made 12.5% commissions from Mantria securities sales, which commissions totaled more than $6.2 million.  Further, the securities offered and sold were not registered with the Securities and Exchange Commission ("SEC"), and Mantria, Wragg, Knorr, and McKelvy were not affiliated with any broker dealer registered with the SEC.

### III. <u>STANDARD OF REVIEW</u>

The purpose of a summary judgment motion is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). The "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] by simply pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. After the movant has met its initial burden, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in its favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence,[7] which, as mentioned, the Court views in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). However, conclusory statements based merely on

---

[7] While the parties need not present evidence "in a form that would be admissible at trial, [ ] the content or substance of the evidence must be admissible." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995).

conjecture, speculation, or subjective belief are not competent summary judgment

evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Where, as here, a nonmovant fails to file a timely response, the nonmovant

waives the right to respond and "confesse[s] all facts asserted and properly supported in

the summary judgment motion." *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196,

1200 (10th Cir. 2002). However, the nonmovant's failure to respond does not relieve

the Court of its duty to make the specific determinations required by Rule 56(c). *Id.*

## IV. ANALYSIS

**A. FRAUD IN THE OFFER OR SALE OF SECURITIES - VIOLATIONS OF SECURITIES ACT SECTION 17(a) [15 U.S.C. § 77q(a)] (CLAIM 1) AND FRAUD IN THE PURCHASE OR SALE OF SECURITIES IN VIOLATION OF EXCHANGE ACT SECTION 10(b) AND RULE 10b-5 [15 U.S.C. § 78j(b) AND 17 C.F.R. § 240.10b-5] (CLAIM 2)**

1. <u>Imputing the Actions of Individual Defendants to Mantria</u>

Where, as here, a corporate defendant is a corporate embodiment of individual

defendants, the individual defendants' awareness of Securities Act violations, including

violations of Section 17(a), is imputable to the corporate defendant. *S.E.C. v. Manor*

*Nursing Centers, Inc.*, 458 F.2d 1082, 1089 (2d Cir. 1972); *see also Powell Prods. v.*

*Marks*, 948 F. Supp. 1469, 1480-81 (D. Colo. 1996) (stating that officer's knowledge

could be imputed to the corporation). Additionally, "the principles of agency may be

used to impute the actions of corporate officers and directors to the corporation itself-in

essence, making the corporation liable under § 10(b) [of the Exchange Act] and Rule

10b-5. A corporation may be held liable co-extensively with the officer or employee

actually responsible for the fraudulent conduct engaged in while in the course of the employment and while transacting corporate business." *APA Excelsior III, L.P. v. Windley*, 329 F. Supp. 2d 1328, 1353-54 (N.D. Ga. 2004) (internal citations and modification omitted); *see also Magnum Foods v. Cont'l Cas. Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994) ("Since a corporation is only a legal entity, it cannot act or have a mental state by itself.  It can only act through its officers and employees, and these acts are attributed to the corporation under basic principles of agency.") (internal citation omitted).  In the instant case, as discussed below, the Court finds that the SEC has presented ample evidence that Defendants Wragg and Knorr, as Mantria officers, and Defendant McKelvy, as a seller of Mantria securities, functioned as agents of Mantria and, thus, their knowledge and actions may be imputed to Mantria itself.

      2.   Undisputed Evidence Supporting the SEC's Claims

     In support of the first claim of relief, the SEC alleges that Mantria, through its officers Wragg and Knorr, and McKelvy, as a promoter of Mantria securities, violated Section 17(a) of the Securities Act, 15 U.S.C. §§ 77q(a) when it committed fraud in the offer or sale of securities.  (Doc. # 1 at 23.)  In particular, the SEC asserts that Mantria "directly or indirectly, in the offer and sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, employed a device, scheme or artifice to defraud with scienter; negligently obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary to make the statements made, in light of

11

the circumstances under which they are made, not misleading; or negligently engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of securities." (*Id.*)

In support of the second claim of relief for violations of the Exchange Act Section 10(b) and Rule 10b-5, the SEC complains of similar conduct identified in connection with Claim 1.  (*Id.* at 24.)

Pursuant to 15 U.S.C. § 77q(a),

It shall be unlawful for any person in the offer or sale of any securities or any security-based swap agreement . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statements of a material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The term security includes any "security feature," "evidence of indebtedness," "certificate of interest or participation in any profit-sharing agreement," or "investment contract," of the kind that Mantria was selling or offering for sale.  15 U.S.C. § 77b(a)(1). "[W]hether a financial relationship constitutes an investment contract is 'whether the scheme involves [1] an investment of money [2] in a common enterprise [3] with profits to come solely from the efforts of others.'"  *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 940 F.2d 564, 572 (10th Cir. 1991) (quoting *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946)).

Similarly, pursuant to the Exchange Act Section 10(b), it is

unlawful for any person, directly or indirectly, by the use of any means or
instrumentality of interstate commerce or of the mails, or of any facility of
any national securities exchange . . . (b) [t]o use or employ, in connection
with the purchase or sale of any security . . . not so registered [on a
national securities exchange] . . . any manipulative or deceptive device
or contrivance in contravention of such rules and regulations as the
Commission may prescribe as necessary or appropriate in the public
interest or for the protection of investors.

15 U.S.C. § 78j(b).  Such conduct is also proscribed by Rule 10b-5, which states,

It shall be unlawful for any person, directly or indirectly, by the use of any
means or instrumentality of interstate commerce, or of the mails or of any
facility of any national securities exchange, (a) To employ any device,
scheme, or artifice to defraud, (b) To make any untrue statement of
material fact or to omit to state a material fact necessary in order to make
the statements made, in the light of the circumstances under which they
were made, not misleading, or (c) To engage in any act, practice, or
course of business which operates or would operate as a fraud or deceit
upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  Thus, to establish a Section 10(b) or Rule 10b-5 violation, the

SEC must prove that Defendants made: (1) a misrepresentation or omission (2) of

material fact (3) with scienter (4) in connection with the purchase or sale of securities,

and (5) by virtue of the requisite jurisdictional means.  *S.E.C. v. Wolfson*, 539 F.3d

1249, 1256 (10th Cir. 2008).

The term "scienter" refers to "a mental state embracing intent to deceive,

manipulate, or defraud."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)

(quoted in *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1258 (10th Cir.

2001)).  Not only does "scienter" encompass knowing or intentional misconduct, but for

purposes of Section 10(b), it also encompasses recklessness, which is "conduct that is

13

an extreme departure from the standards of ordinary care, and which presents a danger

of misleading buyers or sellers that is either known to the defendant or is so obvious

that the actor must have been aware of it[.]" 264 F.3d at 1258 (quoting *Anixter v. Home-*

*Stake Prod. Co.*, 77 F.3d 1215, 1232 (10th Cir. 1996)).  The "in connection with"

requirement of Section 10(b) and Rule 10b-5 includes situations where a broker accepts

payment for securities that he never intends to deliver, or who sells customer securities

with intent to misappropriate the proceeds.  *S.E.C. v. Zandford*, 535 U.S. 813, 819

(2002).  Finally, a "statement or omission is only material if a reasonable investor would

consider it important in determining whether to buy or sell stock, and if it would have

significantly altered the total mix of information available to current and potential

investors."  *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1265 (10th Cir.

2001) (internal quotation omitted).

In the instant case, the SEC has presented evidence that Defendant Mantria,

through its officers, Defendants Wragg and Knorr, and through Defendant McKelvy,

issued securities offerings in the form of private placement memoranda, and used

instruments of communication in interstate commerce (*e.g.*, e-mail or radio broadcasts)

or the mail in connection with the offer or sale of securities.  (*See* Doc. # 159-9 at 128:2-

19, 129:17-130:6; Doc. # 159-10 at 95:17-23; Doc. # 159-16; Doc. # 159-3 through #

159-6; # 159-12.)  Most notably, the private placement memoranda themselves clearly

state that the offerings are securities.  (*See*, *e.g.*, Doc. # 159-4 at 4, 10, 19, 27.)  The

SEC has also presented considerable evidence that Mantria, through Wragg, Knorr, and

14

McKelvy, made material misrepresentations and omissions concerning the probable returns on investment and the risks inherent in the securities offerings, all in an effort to foster the above-described fraudulent scheme to the detriment of Mantria's investors who relied on such information when making their investment decisions.  Additionally, the SEC has presented evidence that Mantria, through its officers (Wragg and Knorr), had the requisite scienter, whether by way of an intent to deceive, manipulate or defraud, or by engaging in conduct that was an extreme departure from the standards of ordinary care, such that it misled buyers, and the danger of misleading buyers was so obvious that Mantria, through its officers, must have been aware of it.  For example, not only did Defendant Mantria, through the other Defendants, entice victim investors to purchase unregistered securities with illusory promises of improbably high rates of return, Mantria, through its agent's, Defendant McKelvy's, presentation at various Mantria investment seminars, encouraged potential investors to liquidate their traditional investments, including the equity in their homes, and to borrow as much money as possible to fund their investments with Mantria.  (*See*, *e.g.*, Transcript of May 7, 2008 Speed of Wealth Seminar, Doc. # 159-13 at 70-86; Transcript of May 21, 2009 Speed of Wealth Seminar, Doc. # 159-14 at 62-64.)

Having reviewed the submitted evidence, the Court is satisfied that Mantria has met its burden under Rule 56 and that summary judgment against Mantria is warranted with respect to the first claim of relief for violations of Securities Act Section 17(a),

15 U.S.C. § 77q(a) and the second claim of relief for violations of the Exchange Act

Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

**B.     SALE OF UNREGISTERED SECURITIES IN VIOLATION OF SECURITIES ACT SECTIONS 5(a) AND (c) [15 U.S.C. §§ 77e(a), 77e(c)] (CLAIM 3)**

In connection with the third claim for relief, the SEC alleges that Mantria, through

its officers Wragg and Knorr, and McKelvy, as a promoter of Mantria securities, violated

sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c) when it sold

securities that were not registered with the SEC.  (Doc. # 1 at 24-25.)

"To make out a prima facie case of a violation of section 5(a), the SEC must

show that securities were offered or sold in interstate commerce and that no registration

statement was filed for any such offering or sale.  Once the SEC establishes a prima

facie case, it falls to Defendants to prove that the securities in question are exempt from

registration."  *S.E.C. v. Prater*, 289 F. Supp. 2d 39, 51 (D. Conn. 2003) (citing *S.E.C. v.*

*Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998)).  Scienter is not an element of a violation

of the Securities Act's registration requirements.  *Aaron v. S.E.C.*, 446 U.S. 680, 714 n.5

(1980).

Having reviewed the submitted evidence, the Court is satisfied that Mantria has

met its burden under Rule 56.  It is undisputed that the securities offerings were not

registered under the Securities Act.  (*See* Defendants Mantria, Wragg, and Knorr's

Answer to the Complaint, Doc. # 1, ¶¶ 1, 25, 47; *see also* McKelvy Testimony, Doc.

# 159-9 at 37:23-38:18.)  Additionally, as already discussed, the securities were offered

or sold in interstate commerce, by mail and e-mail.  Accordingly, the Court finds that

16

summary judgment against Mantria is warranted with respect to the third claim of relief

for violations of Securities Act Sections 5(a) and (c), 15 U.S.C. §§ 77e(a), 77e(c).

## C.   REQUEST FOR PERMANENT INJUNCTION AGAINST FUTURE VIOLATIONS OF FEDERAL SECURITIES LAWS

In its Motion for Summary Judgment, the SEC asks the Court to enter a

permanent injunction to bar Mantria's future violations of federal securities laws.  (Doc.

# 159 at 17-18.)

As stated by the Tenth Circuit,

> An injunction based on the violation of securities laws is appropriate if the SEC demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future. Determination of the likelihood of future violations requires analysis of several factors, such as the seriousness of the violation, the degree of scienter, whether defendant's occupation will present opportunities for future violations and whether defendant has recognized his wrongful conduct and gives sincere assurances against future violations.  Although no single factor is determinative, we have previously held that the degree of scienter 'bears heavily' on the decision.  A knowing violation of 10(b) or 17(a)(1) will justify an injunction more readily than a negligent violation of 17(a)(2) or (3).

*S.E.C. v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993) (internal citations omitted).

In the instant case, as discussed above, over the course of approximately two

years, Defendants raised more than $54 million from over 100 investors by egregiously,

recklessly, knowingly, and shamelessly perpetrating a fraudulent scheme whereby they

used misrepresentations, omissions, and blatant lies to induce unsuspecting and

unwitting victim investors to liquidate the equity in their homes and take out bank loans

to invest in Defendants' scheme, which was nothing more than smoke and mirrors.

Thus, given the seriousness and extent of the violations and the degree of scienter required to establish and further the fraudulent scheme, the Court finds that entry of a permanent injunction is warranted.

**D.    DISGORGEMENT OF ILL-GOTTEN GAINS**

In its Motion, the SEC asks the Court to order disgorgement of Mantria's ill-gotten gains from the aforementioned Ponzi scheme.  (Doc. # 159 at 18.)  In addition to these gains, the SEC seeks "interest."  (*Id.* at 19.)  The Court presumes that the SEC's reference to "interest" is to prejudgment interest.

"Disgorgement is by nature an equitable remedy as to which a trial court is vested with broad discretionary powers."  *S.E.C. v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006).  Disgorgement is especially appropriate with respect to profits obtained through securities fraud, as it is a remedy designed to prevent the wrongdoer's unjust enrichment and to deter others' violations of securities laws.  *United States v. Nacchio*, 573 F.3d 1062, 1080 (10th Cir. 2009).  "The amount of disgorgement ordered by a court for violation of securities laws need not be an exact calculation of the defendant's profits, but only a reasonable approximation of profits causally connected to the violation.  Because such calculations are not capable of exactitude, any risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty."  *S.E.C. v. Haligiannis*, 470 F. Supp. 2d 373, 384 (S.D.N.Y. 2007) (internal quotations and modifications omitted).  In a Ponzi scheme, the difference between the total contributions from investors and the total distributions to

investors has been deemed the proper means of estimating a defendant's ill-gotten

gains. *Id.* at 385.  With respect to prejudgment interest, such an award lies within the

Court's discretion and prevents a defendant from benefitting from what amounts to

an interest-free loan. *Id.*  Generally, prejudgment interest is calculated at the IRS

underpayment rate, which reflects the costs to the defendant had it borrowed money

from the government. *Id.*  "[I]t remains within the court's discretion to determine how

and to whom the money will be distributed, and if the district court determines that no

party is entitled to receive the disgorged profits, they will be paid to the United States

Treasury[.]" *Official Comm. of Unsecured Creditors of Worldcom, Inc. v. S.E.C.*, 467

F.3d 73, 81 (2d Cir. 2006) (internal citations and quotations omitted).

    In the instant case, in light of the SEC's evidence that Defendant Mantria,

through the individual Defendants, unjustly enriched itself through the execution of the

above-described Ponzi scheme, the Court finds that disgorgement of the profits Mantria

obtained through the Ponzi scheme is warranted.  As previously noted, Defendants

raised $54,531,488.57 in investor contributions and returned only $17,500,453.21

to them in distributions.  Thus, Mantria unjustly enriched itself in an amount of

$37,031,035.36.  Because Mantria waived the opportunity to respond, the Court will

conclude that this computation is correct.  Further, the Court finds that an award of

prejudgment interest at the IRS underpayment rate is appropriate.  Accordingly, the

SEC is directed to calculate the prejudgment interest owed on $37,031,035.36 from

November 23, 2009, the date identified in the Consent Orders with Defendants Wragg,

Knorr, and McKelvy (*See*, *e.g.*, Doc. #179-2 at 4), to the date of this Order.  The disgorged funds shall be made payable to the United States Securities and Exchange Commission.[8]

**E.    CIVIL PENALTIES**

Finally, the SEC seeks the imposition of civil penalties against Defendant Mantria "up to the amount of pecuniary gain for each Defendant."  (Doc. # 159 at 20.) "Monetary penalties serve the dual functions of punishment and deterrence.  Courts have looked to the following general factors when imposing penalties under the civil penalty provisions of the securities laws: (1) the egregiousness of the violations at issue; (2) defendants' scienter; (3) the repeated nature of the violations; (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition."  *S.E.C. v. Huff*, 758 F. Supp. 2d 1288, 1363 (S.D. Fla. 2010) (citations omitted).

---

[8]  In the instant Motion, the SEC also seeks disgorgement of Defendants Wragg's, Knorr's, and McKelvy's ill-gotten profits.  (*See* Doc. # 159 at 19.)  However, pursuant to the SEC's later-filed Consent Decrees with each of these Defendants, such disgorgement "shall be determined by the Court upon motion of the Commission[.]" (*See* Doc. # 178-1, ¶ 3; Doc. # 179-1, ¶ 3; Doc. # 184-1, ¶ 3.)  Further, the Consent Decrees also state that, "[i]n connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties." (*Id.*) In light of the SEC's limited withdrawal of the instant Motion for Summary Judgment as against Defendants Wragg, Knorr, and McKelvy, and the representation that separate motions for disgorgement will be filed, the Court reserves ruling on the SEC's request for disgorgement of Wragg's, Knorr's, and McKelvy's ill-gotten gains until such time that proper motions are before the Corut.

Nearly identical penalties frameworks are set forth in section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).  Both Acts set forth a three-tier penalty structure in which each tier provides for a penalty that shall not exceed the greater of either a specific enumerated statutory amount or "the gross amount of pecuniary gain to such defendant as a result of the violation."[9]

Upon consideration of these factors, the Court finds that imposition of civil penalties is warranted.  As previously discussed, Defendants engaged in egregious violations of the Securities and Exchange Acts and Regulations with scienter and recklessness.  Further, Defendants repeatedly engaged in these acts for at least two years, during which time they preyed on unsuspecting and unwitting investors who liquidated their retirement accounts and risked their home equity only to have their life's savings washed away by Defendants' sociopathic greed.  Thus, without question, Defendants' conduct is deserving of the most severe penalties available under 15 U.S.C. § 77t(d).  However, despite the fact that Mantria failed to respond to the instant

---

[9]  Under the first tier, "[f]or each violation, the amount of the penalty shall not exceed the greater of (i) $5,000 for a natural person or $50,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation."  Under the second tier, the "amount of penalty for each such violation shall not exceed the greater of (i) $50,000 for a natural person or $250,000 for any other person or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation," if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of the regulatory requirement."  Finally, under the third tier, "the amount of penalty for each such violation shall not exceed the greater of (i) $100,000 for a natural person or $500,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation," if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"; and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  15 U.S.C. § 77t(d)(2).

Motion and, thus, present any evidence as to whether its financial condition warrants

a reduction in the assessed penalties, the Court is well-aware of Mantria's financial

condition, based on periodic reports from the Receiver.  (*See* Doc. ## 101, 126.)  Thus,

mindful of the importance of maximizing recovery for the victim investors, and given the

limitations in Mantria's liquid assets and the uncertainties concerning the optimal returns

on Mantria's illiquid assets, the Court finds that a reduction in the assessed penalty is

warranted.  Accordingly, the Court will impose a civil penalty in the amount of $500,000,

the maximum enumerated statutory penalty for violations involving fraud, deceit,

manipulation, or deliberate or reckless disregard of a regulatory requirement, which

directly or indirectly resulted in substantial losses or created a significant risk of

substantial losses to Mantria's investors.  Such penalty against Mantria shall be paid

to the United States Treasury, in the care of the Comptroller for the Securities and

Exchange Commission.

## V.  CONCLUSION

Accordingly, IT IS ORDERED THAT:

1.      Plaintiff's Motion for Summary Judgment(Doc. #159) against Mantria is

GRANTED;

2.      Plaintiff is directed to submit, within 14 days of this Order, a proposed Order of

Permanent Injunction against Mantria that conforms to the substance of this

Order;

3.      The Court shall retain jurisdiction over this action for all purposes in connection

with this matter, including implementation and enforcement of the terms of this

Order and to grant such relief as the Court may deem necessary and just.

DATED:  August __05__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge