IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 09-cv-02676-CMA-MJW

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MANTRIA CORPORATION,
TROY B. WRAGG,
AMANDA E. KNORR,
SPEED OF WEALTH, LLC,
WAYDE M. MCKELVY, and
DONNA M. MCKELVY,

    Defendants.

---

**ORDER GRANTING MOTION FOR ENTRY OF FINAL
JUDGMENT AS TO TROY B. WRAGG AND AMANDA E. KNORR**

---

This matter is before the Court on the "Motion for Entry of Final Judgment Against Defendants Troy B. Wragg [and] Amanda E. Knorr . . . [,]" filed by the Securities and Exchange Commission ("SEC") on February 22, 2012.[1] (Doc. # 256.) After protracted briefing and a hearing,[2] the motion is now ripe. For the following reasons,

---

[1] The SEC filed the original motion also as against Defendants Wayde M. McKelvy and Donna M. McKelvy. (*See* Doc. # 256.) Neither of the McKelvys responded to the motion, which the Court granted as to them during the June 20, 2012 hearing held in this matter. (*See* Doc. # 289.)

[2] Wragg and Knorr filed a "Response to Motion for Entry of Final Judgment" on April 9, 2012 (Doc. # 269), to which the SEC replied on April 23, 2012 (Doc. # 272). The Court held a hearing on June 20, 2012. (*See* Doc. # 289.) After the hearing, Defendants submitted "Supplemental Authority in Support of Defendants Wragg & Knorrs' Arguments on Disgorgement" (Doc. # 291), to which the SEC responded (Doc. # 293).

the motion filed by the SEC against Wragg and Knorr (occasionally referred to herein as "Defendants") is granted.

## I. BACKGROUND

Defendants, who are former principals of Defendant Mantria Corporation (referred to in this Order as "Mantria Corporation" or just "Mantria") have, for the purpose of resolving the issue of final judgment, admitted as true the facts alleged by the SEC.[3] Essentially, Defendants, who controlled Mantria Corporation, ran a massive Ponzi scheme that raised over $54 million and defrauded hundreds of investors. Defendants lied to promote Mantria securities. Mantria never generated any real revenue and, in classic Ponzi scheme fashion, old investors were paid with new investors' money.

After the SEC filed suit, the Court appointed a Receiver to, among other things, marshal, conserve, and liquidate the assets of Mantria Corporation for the benefit of the defrauded investors.[4] (Doc. # 82.) On March 29, 2011, the Court ordered the entry of permanent injunctions as to Wragg and Knorr. (Doc. ## 182 and 183.) The SEC has

---

[3] The Court entered, as against Mantria Corporation, a permanent injunction (pursuant to its August 5, 2011 Order granting summary judgment (Doc. # 211)), and final judgment on September 12, 2011 (Doc. # 215). The Court hereby incorporates the findings of fact made in those filings.

[4] Proceeding concurrently with this action is a lawsuit encaptioned *John Paul Anderson v. Astor Weiss Kaplan & Mandel, LLP, et al.*, No. 12-cv-00488-RBJ (D. Colo.), which the Receiver filed against several individuals and entities that allegedly advised Defendants and Mantria Corporation on various business matters. Also pending is a class action lawsuit, *Touchstone Group, LLC v. Daniel J. Rink, et al.*, No. 11-cv-02971-WYD-KMT (D. Colo.), which was filed by Mantria investors against the same, and additional, individuals and entities.

now moved for entry of final judgment against these Defendants, arguing that the Court (1) should order them to disgorge, jointly and severally with Mantria Corporation, $37,031,035.36 plus interest and (2) should assess an additional amount in civil monetary penalties.  (*See* Doc. # 256.)  Wragg and Knorr do not deny that judgment should be entered against them but, rather, simply "dispute the amounts set forth in the SEC's motion."  (Doc. # 269 at 1.)

## II. DISCUSSION

### A.    DISGORGEMENT

The SEC is entitled to seek disgorgement, under 15 U.S.C. § 78u(d)(5), in SEC-instigated injunctive actions.  *See, e.g.*, *S.E.C. v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1115 (9th Cir. 2006) (explaining that district courts have broad equity powers to order the disgorgement of "ill-gotten gains" obtained through violating federal securities law).  As an equitable remedy, disgorgement is "meant to prevent the wrongdoer from enriching himself by his wrongs."  *S.E.C. v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993).  Unlike restitution, "[d]isgorgement does not aim to compensate the victims of the wrongful acts . . . ."  *Id.*  Instead, "the primary purpose of disgorgement as a remedy for federal securities laws violation is deterrence . . . ."  *S.E.C. v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996).  Accordingly, "a district court can order disgorgement of all profits reaped from securities fraud, even if it exceeds actual damages to victims."  *S.E.C. v. Haligiannis*, 470 F. Supp. 2d 373, 384 (S.D.N.Y. 2007).  The amount of disgorgement ordered "need not be an exact calculation of the

defendant's profits, but only 'a reasonable approximation of profits causally connected to the violation.'" *Id.* (quoting *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995)).

This amount is determined by subtracting the total distributions to investors from the total amount they contributed. *See id.* at 384-85 (citing *S.E.C. v. Invest Better 2001*, 01 Civ. 11427, 2005 WL 2385452, at *4 (S.D.N.Y. May 4, 2005) (unpublished) (calculating disgorgement in Ponzi scheme by subtracting total distributions from total contributions). Finally, defendants may be held jointly and severally liable for disgorgement. *First Jersey*, 101 F.3d at 1476.

In the instant case, the SEC asserts, Defendants do not deny, and the Court agrees that Defendants raised $54,531,488.57 in investor contributions but returned only $17,500,453.21 to investors in distributions. (Doc. # 256 at 11.) Nonetheless, Defendants argue that the $37,031,035.36 difference between those figures is not a fair amount of disgorgement to charge them. (*See* Doc. # 291.) Instead, they argue that the proper disgorgement figure is the "amount[] they actually received . . . ." (*Id.* at 1.) By way of example, they point to the disgorgement the SEC has sought from the McKelvys – $6,273,632.78 from Wayde McKelvy and $429,731.84 from Donna McKelvy (Doc. # 256 at 9-11) – which the SEC based on commissions the McKelvys received from promoting Mantria securities (*id.*). These commission-based amounts were "actually received" by the McKelvys, so Defendants' argument seems to go, because they could be deposited in the McKelvys' personal bank accounts, whereas the

4

$37,031,035.36 received by Wragg and Knorr was used not just to pad their personal bank accounts but, also, to pay Mantria's lawyers, accountants, etc.  (*See* Doc. # 291.)

The Court rejects this argument because Defendants' conception of ill-gotten gains is too narrow.  As the principals of Mantria Corporation, it is fair to say that all contributions to Mantria benefitted Wragg and Knorr.  For example, as the SEC points out (Doc. # 293 at 3), paying commissions to the McKelvys benefited Wragg and Knorr because doing so prompted and encouraged the McKelvys to continue promoting Mantria securities and to obtain new investors.  Although enjoyment of such a benefit is, in a certain sense, less obvious than that experienced by depositing money in a personal bank account, the benefit is still directly caused by the investors' loss. Moreover, the commissions Defendants paid to the McKelvys constitute business expenses, which Defendants are not entitled to have subtracted from the total contributions made by investors.  *See, e.g.*, *JT Wallenbrock & Assocs.*, 440 F.3d at 1114-15 ("It follows that it would be unjust to permit the defendants to offset against the investor dollars they received the expenses of running the very business they created to defraud those investors into giving the defendants the money in the first place.") Accordingly, disgorgement of all contributions to Mantria, which Mantria did not later distribute to investors, is appropriate.[5]

---

[5]  For this reason, the Court rejects Defendants' argument that the Court should subtract the amount of disgorgement charged to the McKelvys from the disgorgement Defendants owe.  (Doc. # 291 at 4-5.)

On this point, Defendants raise two related, but distinct, arguments. First, they assert that if they are "ordered to disgorge the entire amount lost by investors, any disgorgement amount entered against [them] must be reduced by the amount of any moneys returned to investors" by the Receiver, including amounts recovered as a result of the *John Paul Anderson v. Astor Weiss Kaplan & Mandel, LLP, et al.* lawsuit, which the Receiver filed. (Doc. # 291 at 4.) Defendants cite caselaw supporting their position (*see id.* at 3-4), and the SEC notes that it "does not oppose such terms being included in the final judgment against Wragg and Knorr" (Doc. # 293 at 2.) Accordingly, the SEC and Defendants shall submit stipulated language to be included in the final judgments against Wragg and Knorr, specifying that any moneys returned to investors by Mantria's Receiver, which are the result of liquidation of properties or assets directly linked to investor contributions, shall be deducted from the amount of disgorgement owed by Defendants.

Defendants' second argument is that the amount of disgorgement ordered against them should be further reduced by any moneys returned to investors through the class action lawsuit, *Touchstone Group, LLC v. Daniel J. Rink, et al.*, No. 11-cv-02971-WYD-KMT (D. Colo.). However, as the SEC points out, the problem with Defendants' argument is that neither the instant Defendants nor Mantria Corporation are defendants in the class action. (Doc. # 293 at 2.) Accordingly, as opposed to the lawsuit instituted by Mantria's Receiver, in which proceeds from the action would be transferred to investors by Mantria, any proceeds from the class action lawsuit would

be transferred to investors not by Mantria but, rather, by the individuals and entities sued. Defendants cite no authority under which the Court could reduce Defendants' disgorgement based on amounts paid by other individuals and entities with whom Defendants are not jointly and severally liable. Moreover, the logic of Defendants' argument echoes that which forms the basis of their assertion that the McKelvys' disgorgement should be subtracted from what Defendants owe. Again, however, that logic rests on an overly narrow conception of ill-gotten gains. As such, the proper amount of disgorgement applicable to Wragg and Knorr is all contributions to Mantria not distributed by Mantria to investors.

**B.     CIVIL MONETARY PENALTIES**

The SEC is also entitled to seek civil monetary penalties. *See* 15 U.S.C. § 78u(d)(3). Similar to disgorgement, civil penalties "are not 'damages' payable to the victim, but fines or assessments payable to the government." *Ellett Bros., Inc. v. U.S. Fidelity & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001). However, unlike disgorgement, which "merely restores the defendant to his original position without extracting a real penalty for his illegal behavior, the imposition of civil penalties is appropriate to accomplish the goal of punishment." *U.S. S.E.C. v. Universal Exp., Inc.*, 646 F. Supp. 2d 552, 567 (S.D.N.Y. 2009) (quotation marks, citations, and alterations omitted).

The amount of the penalty assessed "shall be determined by the court in light of the facts and circumstances" of the case. 15 U.S.C. § 78u(d)(3)(B)(i); *see also, e.g.*, *Universal Exp., Inc.*, 646 F. Supp. at 568 (listing several factors courts often consider in

determining the amount of civil penalties). As stated in § 78u, the amount of the penalty shall not exceed "the gross amount of pecuniary gain . . . as a result of the violation" if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 78u(d)(3)(B)(iii)(aa) & (bb).

In the instant case, the Court agrees with the SEC that a "significant penalty is warranted." (Doc. # 256 at 12.) As the SEC argues, "Defendants raised over $54 million from the investors they defrauded, returning just over $17 million through Ponzi payments, which had ruinous effects on numerous investors." (*Id.*) As stated previously, for purposes of this motion, Defendants do not dispute the facts alleged by the SEC. Thus, a "third tier" penalty under § 78u(d)(3)(B)(iii) is appropriate. In light of the facts and circumstances presented, the Court agrees with the SEC that the egregious nature of this case merits a penalty for Defendants in the amount of their pecuniary gain: $37,031,035.36 plus interest.

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that the SEC's motion for entry of final judgment (Doc. # 256), as against Troy B. Wragg and Amanda E. Knorr, is GRANTED. Final judgment against Wragg and Knorr, as well as against Defendants Speed of Wealth, LLC, Wayde M. McKelvy, and Donna M. McKelvy, will be entered by separate orders. Accordingly, it is

FURTHER ORDERED that the SEC submit new proposed final judgments as to Troy B. Wragg and Amanda E. Knorr that are consistent with this Order, including the stipulated language mentioned, *supra*.  It is

FURTHER ORDERED that the SEC submit a supplemental declaration to update prejudgment interest calculations, showing the amount of prejudgment interest owed by Defendants Troy B. Wragg. Amanda E. Knorr, Speed of Wealth, LLC, Wayde M. McKelvy, and Donna M. McKelvy AS OF SEPTEMBER 12, 2012.  Such declaration, as well as the proposed final judgments as to Troy B. Wragg and Amanda E. Knorr SHALL BE SUBMITTED by September 10, 2012.

DATED:  August   30   , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge