IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 09-cv-02676-CMA-MJW

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MANTRIA CORPORATION,
TROY B. WRAGG,
AMANDA E. KNORR,
SPEED OF WEALTH, LLC,
WAYDE M. MCKELVY, and
DONNA M. MCKELVY,

    Defendants.

_____

**ORDER GRANTING IN PART RECEIVER'S MOTION
TO APPROVE DISTRIBUTION PLAN**
_____

This matter is before the Court on the Receiver John Paul Anderson's ("the Receiver") Motion to Approve Receiver's Report, Proposed Distribution Plan, and Proposed Allocation Percentages and Distribution Procedures. (Doc. # 669.) The Securities and Exchange Commission ("SEC") and Carbon Diversion Solutions LLC, Douglas Guyer, and James Holt ("CDS Creditors") filed Responses to the Receiver's Proposed Distribution Plan on December 17, 2019, and January 3, 2020, respectively. (Doc. ## 667, 679.) The Receiver filed a Reply addressing the SEC's Response on December 31, 2019. (Doc. # 678.)

For the following reasons, the Court grants the Receiver's Motion in part and modifies the Distribution Plan in part.

1

## I.   BACKGROUND

This case arises from a Ponzi scheme Defendants perpetrated from September 2007 through November 2009. On November 16, 2009, the SEC filed a Complaint against Defendants alleging several violations of the federal securities laws that were related to the scheme. The Court entered Final Judgment against Defendant Mantria Corporation on September 12, 2011.

Specifically, the Court ordered that the entity was "liable for disgorgement of $37,031,035.36, representing profits gained as a result of the [fraudulent] conduct alleged in the Complaint," in addition to prejudgment interest, and a civil penalty in the amount of $500,000. (*Id.* at 4.) The Court entered Final Judgements against the remaining Defendants on September 12, 2012. (Doc. ## 311–15).

After freezing Defendants' assets pursuant to a preliminary injunction in 2009, the Court granted the SEC's Motion to Appoint a Receiver over Defendant Mantria Corporation and its subsidiaries and affiliates, including Speed of Wealth and its subsidiaries and affiliates on April 30, 2010. The Receiver was authorized to, *inter alia*:

> use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants . . . manage, control, operate and maintain the Receivership Estates and hold in his possession, custody and control all Receivership Property . . . employ persons in his discretion to assist him in carrying out his duties and responsibilities . . ., including, but not limited to, accountants [and] attorneys . . . [and to] bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver . . . .

(Doc. # 82 at 4–6.) The Receiver has faithfully discharged his duties for the last ten years.

Based on the Receiver's efforts, "the Receivership had available for payment of administrative expenses and distribution to creditors approximately $1.285 million in

2

cash" as of June 30, 2019.[1] Of the funds that are currently in the Receivership Estate, $800,000 are proceeds from a $6.850 million settlement that the Receiver and a class of Defendants' former investors secured in two lawsuits against individuals and entities that were associated with Defendants ("the Gatekeeper litigation"). The remaining funds in the Receivership Estate are proceeds that the Receiver secured by, e.g., selling real and personal property that formerly belonged to Defendants.

On November 26, 2019, the Receiver filed his Report, Proposed Distribution Plan and Proposed Allocation Percentages and Distribution Procedures ("the Plan") for the Receivership Estate's assets. (Doc. # 669-1.) In its Response, the SEC accurately summarized the Plan as follows:

- $167,021 Additional fees and expenses to the Receiver and other professionals;
- $707,363 Fees for the Receiver's counsel's work on the Gatekeeper litigation;
- $235,730 Payments to former Mantria Employees;
- $107,033 Payments to Unsecured Creditors (which also includes additional payments to former Mantria Employees);
- $50,000 IRS Settlement; and
- $16,289 Payment to Mantria Investors.
- [Total: $1,283,436.]

(Doc. # 667 at 5) (footnote omitted).

The SEC objects to the Plan because "former Mantria employees and other Unsecured Creditors should not take precedence over investors and should not receive

---

[1] In the Receiver's most recent application for approval of fees and expenses, the Receiver noted that, as of March 31, 2020, the Receivership Estate's balance of cash was $1.257 million. (Doc. # 696 at 3.)

3


any recovery," and the "fees sought by the Receiver's counsel in connection with the Gatekeeper litigation should be rejected in whole or in part, and those funds should be distributed to harmed investors." (*Id.* at 2–3.) The CDS Creditors, on the other hand, assert that the Plan should be approved without further amendment. (Doc. # 679 at 6.)

## II.  LEGAL STANDARD

"It is generally recognized 'that the district court has broad powers and wide discretion to determine . . . relief in an equity receivership.'" *SEC v. DeYoung*, 850 F.3d 1172, 1182 (10th Cir. 2017) (quoting *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010)). "This discretion derives from the inherent powers of an equity court to fashion relief." *Id.* (quoting *Vescor Capital*, 599 F.3d at 1194). Additionally, the district court's "broad authority to craft remedies for violations of the federal securities laws," includes "the power to approve a plan of distribution proposed by a federal receiver." *SEC v. McGinn, Smith & Co.*, No. 1:10-cv-457 (GLS/CFH), 2016 WL 6459795, at *2 (N.D.N.Y. Oct. 31, 2016) (quoting *SEC v. Byers*, 637 F. Supp. 2d 166, 174 (S.D.N.Y. 2009)).

Thus, courts have the discretion to approve a receiver's plan that is "fair and reasonable." *Id.* (quoting *SEC v. Wang*, 944 F.2d 80, 81, 85 (2d Cir. 1991) (distribution plan should be "reviewed under [the district] court's general equitable powers to ensure it is fair and reasonable")). In exercising their discretion, courts "may defer to the receiver's choices for the plan's details and should give **substantial weight** to the SEC's views regarding a plan's merits." *SEC v. Amerindo Inv. Advisors Inc.*, No. 05 Civ. 5231, 2014 WL 2112032, at *14 (S.D.N.Y. May 6, 2014) (emphasis added) (citing *Byers*, 637 F. Supp. 2d at 175)).

4

## III. DISCUSSION

The SEC asserts that the Court should reject the Plan in two ways: employees and unsecured creditors should not take precedence over investors; and the Receiver's counsel should not receive the full amount of attorney fees it has requested in connection with the Gatekeeper litigation. The Court will address each argument in turn.

### A. DISTRIBUTION PRIORITIES

In the Plan, the Receiver "identified the following claim categories and priority: (1) Administrative Claims, (2) Employee Claims, (3) Unsecured Creditor Claims, (4) Investor Claims, and (5) IRS Claims." (Doc. # 669 at 3) (citation omitted). The SEC, by contrast, asserts that "the investor victims should receive what has been recovered over the former employees . . . and other unsecured creditors." (Doc. # 667 at 10.) The Court agrees with the Receiver's claim priority structure.

The SEC indicates that it "brought this case to enforce the federal securities laws, and to obtain all appropriate relief against the Defendants for their egregious conduct, including providing the maximum monetary recovery to the defrauded investors," as opposed to Defendants' employees and other creditors. (Doc. # 677 at 8.) The Court is similarly focused on ameliorating the pecuniary harm that the investors sustained. However, the Court is cognizant of the fact that Defendants' conduct harmed others as well. As the Receiver points out in his Reply brief, "[l]ike investors, employees and contractors were victims of the fraud because they provided services to Defendants with the expectation of being paid for those services and without knowledge that Defendants were operating a Ponzi scheme." (Doc. # 678 at 2.)

Notably, the funds that investors will receive from the Receivership Estate are not the only compensation that investors will recover for their losses. In the Gatekeeper

5

litigation, the investor class members received over $3.9 million. (Doc. # 669-1 at 14.) The funds that the Plan reserves for employees and creditors total $342,763, which is less than 10% of what the investors received from the Gatekeeper litigation.

If the funds that have been reserved for employees and creditors were distributed among the investors, each investor would receive a relatively small amount. However, although the funds constitute a mere a faction of what the investors lost, the funds would completely redress the former employees' approved claims, and they would provide a significant measure of relief to Defendants' creditors. Accordingly, the Receiver's Plan equitably balances the competing interests of the investors, the employees, and the creditors.

Although it may not have been the SEC's intention to initiate this case for the benefit of Defendants' employees and creditors, the SEC has created a situation in which it is possible to address an injustice that those individuals have suffered. The Court could not satisfy its duty to ensure that the Receiver's Plan is "fair and reasonable" if the Plan ignored the harm to Defendants' employees and creditors. Therefore, the Court approves the priority structure that the Receiver established in the Plan with respect to those individuals.

**B.     ATTORNEY FEES RELATED TO THE GATEKEEPER LITIGATION**

The Receiver indicates that its counsel "incurred $707,363.52 in fees and expenses related to the litigation against the Gatekeepers," and the Receiver asserts that its counsel should be reimbursed for those fees and expenses as part of the Plan. (Doc. # 669-1 at 16.) The SEC, on the other hand, argues that the Receiver's counsel should be entitled to no more than $200,000 for fees and expenses related to the Gatekeeper litigation. (Doc. # 667 at 12–13.) The Court agrees with the SEC.

In considering applications for compensation by receivers and their attorneys, "courts have long applied a rule of moderation, recognizing that 'receivers and attorneys engaged in the administration of estates in the courts of the United States . . . should be awarded only moderate compensation.'" *Byers*, 590 F. Supp. 2d at 645 (quoting *In re New York Investors, Inc.*, 79 F.2d 182, 185 (2d Cir. 1935)). "The Receiver and any professionals assisting the Receiver should charge a reduced rate to reflect the public interest involved in preserving funds held in the receivership estate." *SEC v. Small Bus. Capital Corp.*, No. 5:12-CV-03237 EJD, 2013 WL 6701928, at *1 (N.D. Cal. Dec. 19, 2013) (citing *Byers*, 590 F. Supp. 2d at 646–47). "The Receiver and his counsel should be moderately compensated for their services because investors who were promised large returns on investments by the defendant may stand to recover 'only a fraction of their losses.'" *Id.* (quoting *Byers*, 590 F. Supp. 2d at 645).

In the instant case, the Receiver filed an Unopposed Motion for Order Setting Procedure and Deadlines for Filing of Claims on October 15, 2015. (Doc. # 478.) In that motion, the Receiver referenced the Gatekeeper litigation and indicated that its counsel "agreed to prosecute the claims . . . on an alternative fee basis." (*Id.* at 20.) Further, the Receiver "recommend[ed] a payment to Bryan Cave of 25% of the $800,000 [i.e., $200,000] received into the Receivership Estate as a result of the settlement agreements with the Gatekeepers as fair compensation for those services." [2] (*Id.*)

---

[2] The Court notes that the Receiver is seeking compensation for **two** law firms for work related to the Gatekeeper litigation: Brownstein Hyatt Farber Schreck, LLP ("BHFS") and Bryan Cave Leighton Paisner, LLP ("BCLP"). *See* (Doc. # 669-1 at 17). However, the Receiver's October 2015 motion specifically recommended that **only** BCLP should be paid from the proceeds of the Gatekeeper litigation. (Doc. # 478 at 20.) The October 2015 motion was silent as to BHFS. Additionally, based on the materials in the record, it appears that BHFS has already been compensated for work it has done in connection with the Gatekeeper litigation. *See, e.g.*, (Doc. # 243 at 2) (reporting that BHFS billed $21,364.65 for, *inter alia*, "communication with investors regarding their asserted claims against the 'Gatekeepers,' and preparation of a litigation risk

Importantly, the Court approved the Receiver's motion, and consequently, approved the recommendation regarding his counsel's "fair compensation." (Doc. # 519.)

As a preliminary matter, the Court agrees with the SEC's observation that "it is unclear why the Receiver's counsel did not seek their fees in connection with and at the time the final judgment was entered in [the Gatekeeper] litigation." (Doc. # 677 at 13.) The Receiver does not address this point in his Reply brief. Additionally, the SEC accurately points out that the Receiver does not "explain why counsel should not be held to their [alternative fee] 'agree[ment]' . . . or why he thought $200,000 was 'fair compensation' in 2015 – **after the litigation and settlement was complete** – but now believes that an additional $500,000 is appropriate." (*Id.*) (emphasis added). The Receiver does not squarely address this issue in his Reply brief either. Rather, the Receiver merely indicates that the fees should be approved because they are reasonable. However, the Receiver's silence regarding the irregularities cited by the SEC speaks volumes.

The Court approved the Receiver's recommendation that $200,000 was fair compensation for his counsel's efforts in connection with the Gatekeeper litigation, and the Receiver never sought to amend that recommendation in the last five years. That fact alone is sufficient to reject an increase in compensation. However, the Court's conclusion is further supported by the fact that granting the Receiver's request would mean that the Receiver's counsel would recover $700,000 of the $800,000 proceeds

---

memorandum for the Receiver to evaluate the types of claims that the Receiver may bring and their attendant risks."); (Doc. # 250) (Order approving payment to BHFS). Accordingly, the Court does not approve any additional compensation for BHFS for any other fees it clams based on its work related to the Gatekeeper litigation. To be clear, the Court is referring specifically to the BHFS's fees that are reflected in Table 6 of the Receiver's Plan. *See* (Doc. # 669-1 at 17). This limitation does not apply to any funds to which BHFS may be entitled that have been the subject of the 20% holdbacks on amounts that have been previously distributed to BHFS.

that were allocated to the Receivership Estate from the Gatekeeper litigation. Thus, the Receiver's counsel would be paid **87.5%** of the proceeds from the Gatekeeper litigation when the Court approved a **20%** payment from those proceeds. That position is inapposite with the principle that "receivers and attorneys engaged in the administration of estates in the courts of the United States . . . should be awarded only moderate compensation." *Byers*, 590 F. Supp. 2d at 645 (citation omitted); *SEC v. Goren*, 272 F. Supp. 2d 202, 206 (E.D.N.Y. 2003) ("courts must exercise discretion to avoid even the appearance of a windfall.").

Therefore, the Court holds the Receiver's counsel to the Receiver's 2015 fee recommendation. As a result, the Receiver's counsel shall not recover more than $200,000 for work related to the Gatekeeper litigation. The remaining $507,363.52 that the Receiver reserved for his counsel in the Plan shall be distributed to the investors.

## IV.  CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

- the Receiver's Motion to Approve Receiver's Report, Proposed Distribution Plan, and Proposed Allocation Percentages and Distribution Procedures (Doc. # 669) is GRANTED IN PART and MODIFIED IN PART as reflected in this Order;

- on or before **August 7, 2020**, the Receiver shall submit a revised proposed order that reflects the modifications the Court has detailed; and

- the hearing that is currently set for July 8, 2020, is VACATED.

DATED: July 6, 2020                          BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

9